UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURA PAULOVICH,

        Plaintiff,              Case No. 5:19-cv-12760
                                District Judge Judith E. Levy
v.                              Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 8), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12) and AFFIRM THE COMMISSIONER'S DECISION

I.    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 8), **GRANT** Defendant's motion for summary judgment (ECF

No. 12), and **AFFIRM** the Commissioner's decision.

II.    **REPORT**

      Plaintiff Laura A. Paulovich brings this action under 42 U.S.C. § 405(g) for

review of a final decision of the Commissioner of Social Security (Commissioner)

denying her application for Disability Insurance (DI) benefits.  This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 8), the Commissioner's cross-motion for summary judgment (ECF No. 12), Plaintiff's reply brief (ECF No. 13), and the administrative record (ECF No. 6).

### A.    Background and Administrative History

Plaintiff alleges her disability began on December 3, 2013, at the age of 45. (R. at 211, 234.)  She filed her application for Disability Insurance Benefits (DIB) on November 28, 2016.  (R. at 173-174.)  In her disability report, she lists anxiety, panic disorder, and post-traumatic stress disorder (PTSD) as limiting her ability to work.  (R. at 203.)  Her application was denied on April 3, 2017.  (R. at 83-90.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (R. at 91-92.)  On August 8, 2018, ALJ Earl Ashford held a hearing, at which Plaintiff and a vocational expert (VE), Brian Womer, testified.  (R. at 41-64.)  On September 10, 2018, ALJ Ashford issued an opinion, which determined Plaintiff's date last insured (DLI) to be March 31, 2019 and that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 8-28.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 169-172.)  However, on July 22, 2019, the Appeals Council denied Plaintiff's request for review.  (R. at 1-7.)  Thus, ALJ Ashford's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on September 20, 2019.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 194 pages of medical records, which were available to the ALJ at the time of his September 10, 2018 decision.  (R. at 303-497 [Exhibits 1F-12F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 3, 2013, the alleged onset date.  (R. at 13.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder and a trauma disorder (including PTSD).  (R. at 13.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 14-17.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.

3

to perform a full range of work at all exertional levels but with the following nonexertional limitations: work limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements, such as moving assembly lines and conveyor belts, involving only work related decisions, with few if any work place changes.

(R. at 16-21.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (R. at 21.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as laundry worker, warehouse worker, hospital housekeeper, hotel housekeeper, and mail sorter.  (R. at 21-22.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since December 3, 2013.  (R. at 22.)

## D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

---

20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence

5

standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## E.    Analysis

Plaintiff alleges that the ALJ's RFC assessment is not supported by substantial evidence because he: (1) failed to follow Social Security Rules for evaluating the intensity, persistence, and limiting effect of her subjective symptoms, relying on the medical record alone rather than the record as a whole; and (2) failed to properly evaluate the third-party statements in the record.  (ECF No. 8, PageID.534, 549-560; ECF No. 13.)  The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the RFC assessment because the ALJ properly evaluated Plaintiff's subjective statements regarding her symptoms as well as the third-party statements submitted on Plaintiff's behalf. (ECF No. 12, PageID.574-589.)  For the reasons that follow, I believe that the Commissioner is correct.

### 1.    RFC Determination

The Plaintiff bears the burden of proof at Steps 1-4, including proving her RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden

6

shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity."). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]" *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [she] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a), 416.945(a). The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Pursuant to Social Security Rule (S.S.R.) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

7

S.S.R. 96-8p, 1996 WL 374184, at *7. "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'" *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (citation omitted).

> **2. The Court should conclude that substantial evidence supports the ALJ's RFC determination, and deny Plaintiff's request for remand**

In assessing Plaintiff's RFC, the ALJ reasoned that although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 18.) To determine whether a claimant is disabled, an ALJ must consider all of a claimant's symptoms and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a), (c); S.S.R. 16-3p, 2017 WL 5180304, at *2.[2] Contrary to Plaintiff's assertions, and in

---

[2] Although the effective date of SSR 16-3p is October 25, 2017, the citations to SSR 16-3p included in this Report and Recommendation are consistent with the previous version, in effect at the time Plaintiff filed her claim for benefits. Further, 20 C.F.R. § 404.1529 became effective March 27, 2017, after Plaintiff filed her DIB claim, but the ALJ explicitly followed its requirements to consider Plaintiff's

accordance with 20 C.F.R. § 404.1529 and S.S.R. 16-3p, the ALJ did consider the record as a whole by comparing Plaintiff's statements of her symptoms to the objective medical opinions and other medical evidence in the record, her activities of daily living, the inconsistent nature of her treatment, and the available third-party statements.  And substantial evidence supports his conclusion and ultimate RFC determination.

### a.    Medical opinions

First, the ALJ compared Plaintiff's allegations of the severity of her symptoms with the medical opinions available, providing a thorough and fair analysis of each.  He acknowledged Plaintiff's testimony that she is unable to work full time due to anxiety and panic attacks, avoids large crowds and driving long distances, and only works six hours per week at her granddaughter's daycare center close to her house because of her anxiety (R. at 16) (see R. at 46-47, 49-54), but found those reports not entirely consistent with several medical opinions in the record, to which he gave some or partial weight (R. at 16-20).[3]  And a review of the record supports the ALJ's finding.  As the ALJ provides, Dr. Herman J. Daldin,

_____

symptoms and the extent to which those symptoms were consistent with the other evidence in the record.  (R. at 17.)

[3] The ALJ also partially discounted these opinions where he deemed appropriate, stating, for example, that the opinion he references by Dr. Jessica Shannon "is a very limited scope of assessment and does not provide a full functional evaluation."  (R. at 19.)

9

Ph.D., who conducted a consultative examination of Plaintiff in March 2017 (R. at 342-346 [Exhibit 4F]), opined that Plaintiff was not "evidencing any problems with memory or concentration that would prevent her from doing work-related activities in a structured, controlled environment" (R. at 345 [Exhibit 4F]); in October 2017, Dr. Jessica Shannon, D.O., Plaintiff's primary care treating physician, advised her potential employer, the US Postal Service, that Plaintiff should avoid driving to large cities as a result of panic attacks, but declined to advise that Plaintiff would be incapable of performing the job of a rural carrier associate (R. at 357-359 [Exhibit 6F]); in July 2018, one of Plaintiff's treating therapists, Shannon McInchak, LMSW, noted that Plaintiff reported working only six hours per week due to panic attacks, and that she had difficulty comprehending a lot of information at once, but opined that Plaintiff could consistently understand, remember, and follow one- or two-step instructions or multi-step but simple instructions, and has the ability to engage in regular social interactions with the public, co-workers, and supervisors (R. at 429-432 [Exhibit 11F])[4]; and James Tripp, the state agency consultant, concluded that Plaintiff was capable of performing simple, unskilled work, with sustainability and persistence (R. at 65-76

---

[4] As the Commissioner asserts (ECF No. 12, PageID.576), Plaintiff does not appear to challenge the ALJ's reliance on Ms. McInchak's opinion in her motion for summary judgment.  Thus, any challenge to that reliance has been waived.  *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (consideration is limited to those arguments raised in a claimant's brief on appeal).

[Exhibit 1A].)  The above is inconsistent with Plaintiff's claims of total disability, and supports the ALJ's RFC assessment that Plaintiff could perform work "limited to simple, routine, and repetitive tasks in a work environment free from fast paced production requirements."  (R. at 16-21.)

In support of her argument for remand, Plaintiff points to medical evidence in the record demonstrating that she reported to counselors panic attacks triggered by driving and crowds, and that medical providers observed and noted her anxiety, but it is not within the province of this Court to reweigh the evidence.  While the Undersigned acknowledges this evidence and the seeming severity of Plaintiff's mental health symptoms (ALJ found anxiety and trauma disorders to be severe impairments at Step 2), the Court cannot "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011).  And again, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley*, 581 F.3d at 406.  Here, the ALJ pointed to contrasting evidence, including the opinion of Ms. McInchak that Plaintiff has the ability to engage in regular social interactions with the public, co-workers, and supervisors.  (R. at 429-432 [Exhibit 11F].)

b.    **Plaintiff's activities of daily living**

11

The ALJ also considered Plaintiff's activities of daily activities to assess

Plaintiff's RFC.  Specifically, ALJ Ashford stated:

> The undersigned has also evaluated whether the claimant's allegations and statements are consistent with other evidence of record, including statements made by the claimant to providers or others, and statements and observations of medical and non-medical sources. Considering these factors, the undersigned has also found that the claimant's allegations are not fully consistent with the entire record.
>
> Specifically, the claimant's allegations that she cannot perform work is inconsistent with the fact that throughout the adjudicated period she performed a variety of activities, such as completing personal care tasks, cooking, cleaning, interacting with family and a few friends, shopping (with someone or short trips by herself), driving (short distances), attending appointments, babysitting her grandchildren, and gardening.  (4F and by testimony).  Furthermore, the claimant admitted she worked part-time during the adjudicated period, up to 6 hours per week, at a childcare facility. (by testimony and 6D-9D).

(R. at 20.)

As Plaintiff asserts (ECF No. 8, PageID.557-558; ECF No. 13, PageID.593),

"[t]he Social Security Administration and the 6th Circuit have made clear that the

ability to perform minimal daily activities does not equate to the ability to perform

work activities on a regular basis, 40 hours a week."  *Coloske v. Comm'r of Soc.*

*Sec.*, No. 12-15198, 2014 WL 1048156, at *7 (E.D. Mich. Mar. 18, 2014) (Berg, J.,

*adopting report and recommendation of* Hluchaniuk, M.J.).  *See also Gayheart v.*

*Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (evidence of minimal daily

activities relevant if it demonstrates that the claimant can perform the activities on

a sustained basis) (citing 20 C.F.R. § 404.1520a(c)(2)).  However, "[a]n ALJ may .

. . consider household and social activities engaged in by the claimant in evaluating

a claimant's assertions of pain or ailments." *Walters*, 127 F.3d at 532.  *See also*

S.S.R. 16-3p at *8; 20 C.F.R. 404.1529(c)(3) (factors to be considered in

evaluating the intensity, persistence, and limiting effects of an individual's

symptoms include daily activities).

Consistent with the ALJ's findings above, a review of the record here

reveals that Plaintiff testified to working six hours per week at a local daycare,

despite suffering from anxiety while on the job, attending doctor and therapy

appointments, completing household chores, and visiting with friends at her home

once or twice a month.  (R. at 49-54, 57-58.)  She also told Dr. Daldin in March

2017 that she cooked, occasionally cared for her granddaughter, and cared for her

chickens and garden.  (R. at 344 [Exhibit 4F].)   It is not in the province of the

Court to re-weigh the evidence. *See Reynolds*, 424 F. App'x at 414.  And, although

Plaintiff's part-time work may not be the most persuasive evidence of Plaintiff's

ability to work on a sustained basis, it was only one facet of the ALJ's reasoning.

It was neither the sole basis nor the linchpin of his decision.  Further, Plaintiff

herself testified that when she was too anxious to perform the assigned task of

watching the children at daycare, she would clean, which she did a majority of the

time at work.  (R. at 50-51.)  This is consistent with the RFC allowing simple,

routine work outside of a fast-paced environment.  (R. at 17.)

### c.  Plaintiff's treatment for her mental health impairments

"[I]f the frequency or extent of the treatment sought by an individual is not

comparable with the degree of the individual's subjective complaints, or if the

individual fails to follow prescribed treatment that might improve symptoms, [the

SSA] may find the alleged intensity and persistence of an individual's symptoms

are inconsistent with the overall evidence of record."  S.S.R. 16-3p at *9; 20 C.F.R.

§ 404.1529(c)(3); *see Reynolds*, 424 F. App'x at 417.

Accordingly, the ALJ considered the conservative and inconsistent nature of

Plaintiff's treatment in discounting the severity of Plaintiff's symptoms, stating:

> [T]he record does not fully corroborate the claimant's allegations of
> mental health symptom severity.  As discussed in detail above, the
> claimant's treatment records indicate that she received only outpatient
> conservative mental health treatment, which consisted of limited
> outpatient therapeutic services.  Nothing reflects further participation
> in more intensive services, such as inpatient treatment or emergency
> services.  Further, the claimant *consistently refused medication
> treatment* for her anxiety symptoms.  Overall, the record, as discussed
> above, generally supports her mental impairments were managed with
> conservative, outpatient treatment.  Thus, this level of *conservative,
> outpatient treatment* is generally not consistent with the severity of
> symptoms the claimant has alleged for this period.

(R. at 20 (emphases added).)  *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719,

727 (6th Cir. 2013) ("minimal and conservative treatment" is a valid reason to

14

discount severity).  And a review of the record supports the ALJ's findings.  As the

ALJ reasoned (R. at 18.), following appointments in mid-2016 (R. at R. at 323-

324, 326-328 [Exhibit 2F]), Plaintiff had a one year gap in therapy treatment (R. at

392 [Exhibit 8F]), and there are no records in the transcript evidencing Plaintiff's

participation in an inpatient program for her mental impairments.  *White v.

Comm'r of Soc. Sec.*, 572 F.3d 272, 283-84 (6th Cir. 2009) (gap in treatment

inconsistent with a claim of disability).

Plaintiff asserts that the ALJ failed to consider that her lack of more

intensive treatment and refusal of medication may be a function of her underlying

mental health impairments, citing to documentation in the record of her fear of

medication.  (ECF No. 8, PageID.559, citing R. at 373-374; ECF No. 13,

PageID.597.)  S.S.R. 16-3p, at *9-10 provides that an ALJ should consider reasons

why a claimant may have failed to follow prescribed treatment, including the effect

of a mental impairment on the claimant's judgment, and should "review the case

record to determine whether there are explanations for inconsistencies in the

[claimant's] statements about symptoms and their effects, and whether the

evidence of record supports any of the [claimant's] statements at the time he or she

made them."  And before enactment of S.S.R.16-3p, "the Sixth Circuit recognized

that for a claimant suffering from mental illness, noncompliance with treatment

could be a symptom of his condition, rather than evidence that his condition is not

disabling." *Rogers v. Comm'r of Soc. Sec.*, No. 17-14151, 2019 WL 1102226
(E.D. Mich. Jan. 17, 2019), *report and recommendation adopted* No. 17-14151,
2019 WL 1099019 (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th
Cir. 2009), and *Polhemus v. Colvin*, 2016 WL 949218, at *4 (E.D. Mich. Mar. 14,
2016)).  However, to "'establish a severe mental impairment as an acceptable
reason excusing a claimant's adherence to a medical regimen, including
prescription psychiatric medications, the record must contain evidence expressly
linking noncompliance with the severe mental impairment.  The requisite evidence
of that link will preferably appear in an opinion or assessment by a medical
source.'" *Rogers*, 2019 WL 1102226, at *3 (quoting *Burge v. Comm'r of Soc.
Sec.*, No. 1:13 CV 87, 2013 WL 6837192, at *3 (N.D. Ohio Dec. 26, 2013)).

Plaintiff fails to point to any evidence in the record expressly linking her
noncompliance with medication, or her conservative treatment, to her severe
mental impairments.  Instead, she cites only medical records demonstrating her
fear of medications, as stated above.  And the ALJ addressed that fear in his
hearing decision, stating: "Regarding anxiety symptoms, the claimant admitted that
she has been prescribed medications for anxiety symptoms but that she has
declined to take the medications.  She explained that she has had an addiction to
prescribed medications in the past, so she prefers to avoid medications."  (R. at
16.)  Further, a review of the medical opinions discussed above reveals no explicit

16

connection between Plaintiff's mental health impairments and her conservative

treatment and refusal to take recommended medication, with one therapist

(McInchak) only noting that Plaintiff reported previous side effects from an

addiction to medications, that resulted in a fear of taking them.  (See R. at 65-76

[Exhibit 1A], 342-346 [Exhibit 4F], 357-359 [Exhibit 6F], 429-432 [Exhibit 11F].)

Elsewhere the record references Plaintiff's fear that certain medications might have

the potential side effect of changing her personality, although she would not

necessarily refuse all medications, as she would be "comfortable taking Xanax."

(R. at 323, 373.)  Thus, the recorded explanations for her fear of medications are

not linked to Plaintiff's mental health impairment, with no hint that her fears are

irrational, paranoid, or indicia of an inability to appreciate what is in her own best

interest; rather, the only apparent explanations for her refusal appear to be

legitimate reservations which could be harbored by anyone, with or without a

mental impairment.  Nor is it the Court's obligation to scour the record to assist

Plaintiff in supporting her arguments.  *Henderson v. Comm'r of Soc. Sec.*, No. 14-

12675, 2015 WL 2063096, at *2 (E.D. Mich. May 4, 2015) ("[A] plaintiff cannot

simply claim that the ALJ erred while leaving it up to the Court to scour the record

to support this claim.") (quotation marks and citation omitted).   Accordingly, the

Court should decline to remand on this basis.

### d.    Third-party statements

17

An ALJ should consider, as part of his or her RFC analysis, statements submitted by friends, family, or other third parties on behalf of a claimant for Social Security benefits.  S.S.R. 16-3p, at *7; 20 C.F.R. § 404.1529(a), (c). Indeed, "[i]f lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness." *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 810 (6th Cir. 2012) (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). However, "[t]he testimony of lay witnesses . . . is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004).

For context, with regard to the third-party statements at issue, the ALJ stated:

> In addition to the claimant's testimony, the claimant's friend (3E), current employer (19E), and daughter (20E) also completed third party statements on her behalf in the record.  Some weight is given to their assessments of the claimant's limitations due to anxiety and panic attacks, particularly with regard to her difficulty in public; however, the opinions of the State agency consultant (1A), the consultative examiner's assessment (4F), and the treating therapist assessment (11F), fail to support the level of severity of their contentions.  Specifically, although these assessments, as discussed below, reflect the claimant has anxiety related symptoms causing some limitations, the limitations assessed are not as restrictive as the symptoms alleged by the claimant's friend, employer, and daughter. For these reasons, the third party statements are accorded only some weight.

(R. at 16.)  For the reasons that follow, the Court should find that the ALJ did not err in his evaluation of these third-party statements.

Plaintiff first argues that the opinion of Dr. Daldin, the consultative examiner referenced above, is not inconsistent with the third-party statements regarding the severity of Plaintiff's anxiety because he too found Plaintiff to be anxious and noted her reported panic attacks when leaving the house.  (ECF No. 8, PageID.551-552.)  But, as provided above, Dr. Daldin ultimately opined that Plaintiff was not "evidencing any problems with memory or concentration that would prevent her from doing work-related activities in a structured, controlled environment."  (R. at 345 [Exhibit 4F].)  And although the ALJ found this opinion overly broad and lacking in specific functional limitations (R. at 18-19), he committed no error in according it some weight along with other evidence in the record, to find Plaintiff not disabled within the meaning of the Social Security Act, contrary to the third-party statements asserting otherwise.  *Reynolds*, 424 F. App'x at 414.

The same is true for the ALJ's consideration of the state agency consultant, Mr. Tripp's, opinion, to which he accorded *some* weight.  (R. at 19-20, citing Exhibit 1A.)  As provided by the ALJ, Mr. Tripp opined that Plaintiff is capable of performing work-related activities in a structured, controlled environment. Plaintiff asserts that his opinion is internally inconsistent because Mr. Tripp "noted

19

'moderate limitation' in [Plaintiff's] ability to interact appropriately with the general public (Tr. 73), but his ultimate finding concerning [Plaintiff's] abilities to perform the mental demands of work did not include any limitation on the ability to work with the public."  (ECF No. 8, PageID.552.)  However, again, the opinion was just one piece of evidence the ALJ considered to discount the third-party statements in the record and was consistent with the opinions of Dr. Daldin and Ms. McInchak, and the ALJ explicitly incorporated limitations in Plaintiff's RFC beyond those stated in Mr. Tripp's report, including "limiting [Plaintiff] to no fast paced work and to involving only work related decisions, with few if any work place changes."  (R. at 20.)  That Mr. Tripp's opinion contradicts Plaintiff's statements or those of the third-party sources regarding the severity of her symptoms, does not mean the ALJ erred in according it "some weight" for purposes of her RFC or ultimate disability determination.  According less weight to, but still considering, subjective statements of a claimant's symptoms does not amount to error.  *Bass*, 499 F.3d at 509 (in deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility").

Accordingly, the Court should conclude, on the basis of the above, that substantial evidence supports the ALJ's RFC determination, and deny Plaintiff's request for remand.

20

## F.    Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at

529 ("[D]uring the first four steps, the claimant has the burden of proof; this

burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown

legal error that would upend the ALJ's decision.  For the foregoing reasons, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 8), **GRANT** Defendant's motion for summary judgment (ECF

No. 12), and **AFFIRM** the Commissioner of Social Security's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &

Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers

Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 8, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE